I believe they're not possible. This is Eric Tyler, and he's on behalf of Mr. Robertson. Good afternoon, Your Honors. May it please the Court, Counsel, my name is Robin Robertson, and I represent the appellant in this matter, Mr. Eric Tyler. For almost a century, the criminal proceeding to establish any factual proposition. Yet, at Eric Tyler's jury trial, the State introduced bloodhound tracking evidence to identify him as one of three individuals fleeing from the scene of a robbery at a Clark gas station. Identification was a critical issue at Mr. Tyler's jury trial, and we maintain that he was denied due process and a fair trial when the trial court admitted this evidence, and moreover, that he was denied the effective assistance of counsel when his trial attorney failed to object to the admission of this patently inadmissible and highly prejudicial evidence. I'd like to briefly recount the facts of this case. The jury learned that three individuals robbed the Clark gas station, and when the police arrived, they fled the scene. One of those individuals, Ira Tyler, was apprehended at the scene. The other two fled on foot, and though an officer initially followed them away from the scene, the officer mindfully terminated the pursuit when they entered a dark gangway, in part because the officer did not want to ruin a track for a bloodhound later on. Officers established a perimeter, called the bloodhound to the scene, and the bloodhound handler testified at trial, testified about his and his dog's experience, their training, about their success rate, and the officer also explained the procedure that he uses each time his dog tracks a human scent. Using that procedure, the dog tracked a path that began at the entrance to the Clark gas station, followed the route that the offenders were seen taking as they initially fled the scene, and then took the officer on a circuitous route which terminated in the backyard of 1103 West Marion. Officers found Eric Tyler in a basement bedroom in that house and took him into custody. The state, in its closing argument, trumpeted this evidence as evidence identifying Eric Tyler as the perpetrator of the Clark gas station, even going so far as to overstate the import of the evidence, telling the jury that the dog tracked Eric's scent from the scene of the crime to the home, when no such evidence had been introduced. This error... In this case, this is a plain error situation. We've asked this court to review this error as plain error, and then also have argued it's an ineffective assistance of counsel, Your Honor. If anything, closely balanced, where there was no identification. We don't have a victim identification of Eric as one of the three robbers. There was no confession on Eric's behalf. I mean, you have Ira. I think it was Ira who was apprehended while trying to flee the scene. Yes, Your Honor. And then he coughs up some information. He provides some simple identification information, yes, Your Honor. Addresses and so forth, and so then they proceeded to the residence, where they located your client in the basement. They... The officers apprehended Ira. The officers arrived at the scene at around 4.40 in the morning. And then Campbell was in the backyard, I think. Campbell... Willie Campbell was... We actually don't know where Willie Campbell was found. That was not introduced at trial. We do know that one of the officers who was part of the investigation at the home at some time saw Willie Campbell in an alley behind the home. And at the time, he was wearing clothing which matched the description given by the victims. And the state noted that his clothing was muddy. But we actually have no idea whether Willie Campbell was arrested at that point, or if he had been arrested elsewhere and then brought to the house, because perhaps that was the central location of the investigation. Permission was granted to search the basement. Yes, Your Honor. But in this case, the fact that the officers may have eventually ended up at Ira Tyler's home and chosen to search that residence doesn't negate the prejudice that was imposed in this case by the introduction of the bloodhound tracking testimony. Eric's presence at Ira Tyler's home, at his cousin's home, is not particularly prejudicial. He could have been there visiting his other cousin, Devin, who was also at the home. In fact, Devin testified and said that he had spent time with Eric and they had returned to the home together earlier that early morning. Well, there was sweatshirt, cash, and so forth found there, right? Yes, Your Honor. The state did point to a few items. We're not saying that there was no evidence in this case whatsoever. If the only evidence introduced at trial was the bloodhound tracking testimony, that would be a particularly unique case. What we're saying is that the evidence that the state introduced did not overwhelmingly show that Eric Tyler committed this crime. The fact that they had no identification testimony, the fact that they had no confession, they had no scientific evidence that placed Eric Tyler at the scene of the crime. In fact, the only evidence that they had that was Willie Campbell, which was a co-defendant's self-serving exculpatory statement, which the U.S. Supreme Court has found to be inherently suspicious and presumptively unreliable. The state notes in their response that Willie Campbell recanted his statement at trial and that recantations are inherently suspect. But what the state failed to note was that the statement which Willie Campbell recanted at trial was a recantation of a recantation. Willie Campbell changed his story at every turn to deflect suspicion from himself and point the finger at other individuals. I mean, it's obvious why I'm asking these questions, because they find the sweatshirt, the hooded sweatshirt, they find a lot of cash, they find gloves that were described by the victim at the gas station, they find all this stuff there. And in the second prong of the plain air test, did that evidence severely threaten to tip the scales of justice? Well, in the plain air test, they found all this other evidence. If I could speak to that other evidence. It's our position that that evidence certainly wasn't a smoking gun in this case. In fact, the gloves that were found in a room that was adjacent to the room in which Eric was found, those gloves did not match the very detailed description that was provided by the victims in this case. The victims said they were wearing gloves that were black with a dark gray insignia. The gloves that were found were black and white gloves. And they were gloves that were found in a home occupied by two young men. There's nothing about those gloves that identified them as being used in the robbery. And the state did not have either of the victims identify the gloves at trial as gloves that they saw one of the offenders wearing. The cash, they found a wad of $477 inside of a couch in that same room, the room adjacent to where Eric was found. But only $295 was taken during the robbery. So the fact that $477 was found doesn't necessarily tie that cash to the cash that was taken from the robbery. They found a generic black hoodie on the same bed where Eric was arrested, but the jury received information, very detailed information about what these offenders were wearing. They learned that they were wearing golden masks, they had on black hoodies, they had on dark blue pants or black pants, that they were wearing black shoes, which were not sneakers, and that they were wearing these black gloves with the dark gray insignia. Conspicuously, the state introduced no evidence of what Eric Tyler was wearing at the time of his arrest. They introduced every article of clothing that Ira Tyler was wearing when he was arrested because it matched the description given by the offenders. If the state had evidence that Eric Tyler was wearing any clothing at the time of his arrest which matched this very detailed description, surely it would have come at trial. And that was actually a point that the jury latched onto. The questions and the requests that the juries tendered during their deliberations showed how critical identification was in this case, that they had narrowed in on that as an issue of particular import. They asked what Eric was wearing at the time of his arrest. They also asked about the condition of Eric's clothing. And the jury knew that Willie Campbell had been convicted of this crime. And they also had this very detailed description. And the jury honed in on the fact that the description that they had of Eric Tyler's clothing was completely absent. They knew nothing about what Eric was wearing at the time of his arrest. And given the paucity of the evidence, the state ends up relying very heavily on this bloodhound tracking evidence. In their closing argument, the state steps up to the jury and says, here's what we don't have to prove. We don't have to prove that a robbery occurred. That's not in dispute. You know that two individuals have already been convicted of this crime. Ira Tyler and Willie Campbell have both already been convicted of this crime. Your sole responsibility is to determine the identity of the third robber. Who is the third robber? And they launch straight into the bloodhound tracking evidence. It is the very first piece of evidence that they discuss in their closing argument. And they repeatedly come back to it as evidence identifying Eric as one of the three individuals who robbed the Clark gas station. Without identification testimony, without a confession, without any other reliable evidence identifying Eric as one of these three robbers, the state heavily relied on this evidence, which the Illinois Supreme Court has repeatedly found to be per se inadmissible, highly prejudicial, and not sufficiently reliable to be introduced in any criminal proceeding to prove a factual proposition. And that's exactly what happened in this case. We believe that the evidence was closely balanced. And especially given the lack of the smoking gun, the lack of something that said to the jury definitively, you know we've got the guy. And this is why the state in their closing argument said, you know we've got the guy because the bloodhound tracked him. That's the exact thing that you're not allowed to do under people v. Cruz and the cases that preceded it. And it's what the state did in this case. And so because the evidence was, because we maintained the state's case was weak, and because we maintained the state's evidence was closely balanced, we feel that the prejudice in this case is obvious. That the error is appropriate to be reviewed under the plain error doctrine. And it also ties into our argument of ineffective assistance of counsel that the Illinois Courts of Appeals have acknowledged. We believe that this is very clear and obvious error to admit this evidence. So it's a plain error. Now your only question is, is it reversible? That's your argument. We believe it's reversible given the very weak case that the state had against Eric Tyler, Your Honor. Yes, we believe that in this case, given the evidence that the state was able to present to the jury, that had the jury not been presented with the bloodhound tracking evidence, they would have been left with very limited evidence identifying Eric as one of the three robbers. And certainly it could have tipped the scales for them to find that there remained a reasonable doubt in the case such that they could not decide to find him guilty. To briefly address one of the state's arguments in this case, they point this court to a recent First District decision, People v. Lacey, for the proposition that bloodhound tracking evidence can be admitted in criminal trials if it's introduced simply for corroborative purposes. The Lacey court did include that one sentence in its recitation of the case law on bloodhound tracking evidence, but we believe that the statement of law is simply untenable and ask this court not to adopt it. First, the Lacey court was dealing with a post-conviction claim of ineffective assistance of counsel. Thank you. And that statement of law had no bearing on their resolution of the case. They decided on the prejudice prong of the ineffective assistance of counsel argument, finding that because the dog in that case did not lead the officers to the defendant, he could not show prejudice. They never got to the question of admissibility. Which case are you referring to? It's People v. Lacey, Your Honor. I'm sorry, maybe I'm not hearing you correctly. Lacey, L-A-C-Y. It's 4-0-7-L-A-P-3-R-D-4-4-2. It's a 2011 case out of the First District. The second point that I have about that statement of law, Your Honors, is that it appears it was simply unresearched. The cases that the Lacey court cites in support of that principle are Holmes and Moore, but these are two decisions that dealt with the admission of drug-sniffing dog testimony, not human-tracking dog testimony, and those are two completely separate areas of the law. And courts treat those two types of canine testimony completely differently. And the Supreme Court and no other Illinois appellate court... L-A- what is it? Pardon me? L-A-C-Y? I'm still looking for it. It's on page 4 and page 8. It's not in the... It was in the State's brief. State's brief. But the cases that they cite in support of that, the cases the First District cited, are both cases dealing with drug-sniffing dog testimony, not canine-tracking testimony. And we simply maintain that the statement is unsupported and ask that this court not adopt it. For these reasons and those in our briefs, we ask that you reverse Eric Tyler's conviction and remain with us. Good afternoon. May it please the Court? This is a plain Eric case, as you pointed out, and the evidence in this case clearly tied the defendant to the crime. Police recalled the scene of an armed robbery, and Sergeant Stefanski testified that as he moved toward the robbery scene, he saw three suspects fleeing from the scene, climbing over a guardrail, and one of the suspects fell. He captured Ira Tyler, and Ira provided his address to Sergeant Stefanski as 1103 West Marion, which was in the same neighborhood as the gas station that had been robbed. And Ira was convicted of the same crime in a separate trial. Willie Campbell was also tried and convicted in a separate trial and was found hiding in the alley behind the house at the address that Ira had given to the police. Campbell testified that he told police that he had been present when the defendant and Ira planned the crime and that he was forced to participate in the crime. The jury also viewed a recording of Campbell's interview with the police in which he specifically identified the defendant as one of several men who planned the crime. Yes, he did recant, and of course, recantations are a suspect. And he is a cousin of the defendant, so he has a vested interest in trying to get his cousin off when he's already identified him as one of the perpetrators of this crime. The police went to the address that Ira had given and asked Ira's mother if they could search her house, and she consented. In the basement, police found the defendant lying on Devin Tyler's bed with a black hoodie and Campbell's cell phone laying next to him. Robbers have been described as wearing hoodies, masks, and gloves. They did not find any masks that I found in the record, and the defendant fit the general description that was given of the robbers. At the same time that the police were there with the defendant, Campbell's girlfriend, Bridget, with whom Campbell lived, was calling the cell phone that was on the bed next to the defendant to try to find Campbell because he was missing from the bed and it was in the early hours of the morning. The police also found $477 in cash stuffed into the couch in the next room beside the bedroom where the defendant was found, and that of course accounts for the $295. Sure, it's not an exact match, but he may have had some extra cash from some other place. We don't know that, but it was in the same denominations as the money that was taken from the gas station. Gloves were stuffed behind the couch, and the defendant could not be excluded from the DNA profile that was on the gloves. He was weak, but he was not excluded. People note that the money, the clothing, and the phone could not have been placed in the bedroom by the other two robbers because Ira had already been caught. He was not near the house after the crime. And Campbell was found hiding in the alley behind the house, and Campbell was covered with mud, but there was no evidence that mud was found inside the house. So it's likely that Campbell never went into the house, and of course he's not going to leave his cell phone in the house to identify himself if he did go into the house. It just makes no sense. Mrs. Jessup, who owned the house, testified on the night of the crime. She, a friend of hers, and her sons, Devin and Ira, were the only people present in the house. She went to bed a little bit after midnight, and at that time, the defendant was not in the house. Jessup said that the phone had been ringing, and Ira told her that the defendant had been calling that evening. At about 2 a.m., Devin woke up Mrs. Jessup up. He asked to borrow a car to drive either the defendant or Ira to the other person's location. She couldn't remember which person Devin had talked about, and she refused to let him use the car, but she later learned that he had taken the car despite her refusal. The discovery of the defendant in her basement was a shock to Mrs. Jessup, and she stated that the defendant did not have any business at her house that night, and he hadn't been at her house for months. It was not a routine visitor to the house. She also said that she did not keep money in the couch. Devin Tyler testified that he had taken Ira to a girl's house, and that the defendant had returned home with him that evening. However, Sergeant Stefanski testified that he went to the Marion address and spoke with Devin, who told Stefanski that he lived there, his bedroom was in the basement, and that no one should be in his bedroom. Devin told Sergeant Stefanski that he had been in his bedroom about 45 minutes before the police arrived. Are you essentially conceding the error? The dog tracking, is that what you're saying? Even if it is error, it didn't prove anything, frankly. It proved that a dog tracked in the backyard. My question was a little more specific than that. Are you conceding that that was error? According to Cruz, the dog tracking evidence would be error. Go ahead. Stefanski said that Devin told him there was no reason for the defendant to be in his bedroom, the defendant did not live at the house, and Devin had no contact with the defendant that night, even though he testified that he brought him to the house. Devin told Sergeant Stefanski that no large amounts of cash were kept in the house. Stefanski said that he showed Devin the black gloves found by the couch, and Devin denied that he had ever seen them before. Devin was shown the cell phone that was found next to the defendant, and Devin said he didn't know whose phone it was. So this evidence, clear evidence, overwhelmingly points to the defendant as one of the robbers, and any reasonable juror would have found the defendant guilty beyond a reasonable doubt based on this evidence. Now, the defendant, of course, asserts that because the prosecution offered testimony that a dog tracked from the crime scene to the backyard of Ira's house, that this court should reverse conviction and remand for a new trial. Even if you admit that this evidence is wrongly admitted, this court in McDonald's said that if properly admitted evidence establishes an element of the crime, erroneously admitted evidence is harmless. And the police were going to search Ira's house regardless of the fact that the dog tracked anywhere near that house. And therefore, it was no error to admit, I mean, if it was error to admit this evidence, it was harmless error. Assuming that the dog tracking evidence was improperly admitted, that evidence did not implicate the defendant at all, and it did not contradict any of the evidence against the defendant. The scent given to the dog was taken from a reciprocal saw found at the gas station. And that was not shown to be owned or handled by the defendant or Ira or Campbell. And there were no fingerprints on that saw. The saw was not shown on the security video that was recorded at the scene, and there is no reason why armed robbers would have carried a reciprocal saw to an open gas station. What are they going to cut off? The front doors that are already open? It didn't make sense. And assuming that the dog was tracking a scent that was either from Ira or Campbell, the dog only went to the backyard of Ira's address. It didn't go up to the house, and Campbell was the one that was found in the backyard, not the defendant. In this case, the elements of the crime were proven by the undisputed evidence, and the dog tracking evidence didn't change the outcome of the case and did not deny a defendant a fair trial. So this is harmless error. And finally, of course, the people acknowledged that the prosecutor misstated the evidence in this case. There's absolutely no denying that the prosecutor stood up there and said that the dog tracked the defendant to the house. That was wrong. The defense counsel objected every time he did this. The judge did not make a specific ruling on the objection, but the judge did admonish the jury that they had the responsibility to determine what the facts were and that any argument made by counsel that was not based on the evidence or any reasonable inference from the evidence was to be disregarded. So the defense counsel objected? I'm sorry? I'm sorry? The judge did not sustain it or overrule it. The judge simply gave the instruction each time or referred back to the instruction. So it was a bit unusual, but he gave the instruction to disregard the attorney's misstatement of the evidence. Well, he gave the instruction to disregard anything that's not supported by evidence or something to that effect. I'm sorry? To disregard anything not supported by the evidence. Yes, sir. Something like that. Right. The prosecutor's misstatement of the evidence in this case, it didn't change the result of this trial. The defense counsel objections clearly put the jury on notice that the prosecutor was misstating the evidence. They had the evidence. They heard the evidence. They knew that the evidence did not show that the dog tracked the defendant. It didn't even get to the house. It just got to the backyard where Campbell was. So we don't have any evidence that this dog in any way proved the defendant was in any way related to this crime. If there are no more questions, Your Honor, that's all I have to offer. I'm going to ask this court to affirm the decision below. Okay, I guess there are none. Thank you, Mr. Rusty. And Mr. Roberts. Your Honor, I'd like to start with the last point that was made. There was no objection when the state argued repeatedly in closing argument that the bloodhound evidence was indicative of Eric Tyler's guilt. The defense counsel objected numerous times when the state tried to argue about the condition that Eric Tyler was in when the officers found him in the bed. The state was repeatedly saying things such as he was hiding under the covers or he was hiding in the bed, and defense counsel was arguing at those moments to say no such evidence had come in to establish what Eric Tyler's condition was when he was in the bed. There was absolutely no contemporaneous objection at the time that the state was arguing that the dog tracked Eric Tyler sent from the scene of the crime to 1103 West Merion. Counsel did object thereafter. He objected thereafter to the state's interpretation of how many offenders were depicted on the surveillance video. So though counsel made objections during closing argument, he did not object to this evidence, and thus we maintain that the jury was not put on notice that defense counsel had any qualms with the way that the state was representing the bloodhound tracking evidence. Just a few other points, Your Honors. Counsel was speaking about Willie Campbell's confession about the fact that Willie Campbell pointed the finger at Eric Tyler, but what did come out of trial was that it's quite possible that the investigators were actually the first people to bring up Eric Tyler's name during the interrogation. The investigators, the detectives, tipped off Willie Campbell and let him know that they had found Eric Tyler in possession of his phone, and so from that point forward, we now have Willie Campbell fingering Eric Tyler, who he now knows the police are quite interested in. As far as the DNA profile in this case, Your Honors, under People v. Schultz, we maintain that that evidence should not have come in. The DNA profile that was found in this case did not fail to eliminate over half of the U.S. population. It was probative of nothing. The fact that it couldn't eliminate Eric Tyler is not that helpful when it couldn't eliminate, I believe, 70% of the white population, 60% of the Hispanic population. Those are the numbers that we're talking about in this case, and People v. Schultz found that a DNA profile which failed to eliminate 20% of the population was insufficiently probative to be introduced at trial. Speaking to the point that Willie Campbell couldn't have left his cell phone at the house after the incident, two hours transpired from the time that the officers responded to the scene of the crime to the time that the officers entered Ira Tyler's home. It is perfectly possible that Willie Campbell returned to Ira Tyler's home, his cell phone and any other items were left there at the time, the money, the gloves, and that Willie Campbell, over an hour has passed, now feels that it's safe to leave, leaves the home, sees the officers, hides, and at that point gets money. It's perfectly possible that Willie Campbell left that phone at the home either before or after this incident occurred. The state introduced no evidence that placed the phone at the scene of the crime, so we don't feel that that phone is probative of anything in this case. The fact that they would have searched Ira's home regardless is simply not helpful to the state here. The state introduced this evidence to connect two dots. They wanted to connect the offender's last known location and the point where Eric Tyler was arrested. Had officers eventually gone there and found Eric Tyler, certainly they could have introduced that evidence, but what the state wanted to show here is we have connected the two. We now can say that Eric Tyler's presence at the crime scene has been accounted for because we know that the bloodhound tracked a scent from the scene of the crime to Ira Tyler's home, tracked it from a sawzall, which the state repeatedly introduced evidence to suggest the robbers brought to the scene. Both the clerk said that neither he nor the facility owned the sawzall. The state introduced the sawzall in evidence. The state wanted the jury to believe that this was part of the crime. There was testimony in Willie Campbell's statement to suggest that this was found next to the ATM and that the offenders were trying to get into the ATM. So the state wanted the jury to believe that through this bloodhound tracking evidence that they had identified Eric Tyler as the offender. They trumpeted that evidence in a closing argument time and time again, and it prejudiced Eric Tyler, and for these reasons and those other briefs, we ask that you reverse its conviction and remand the matter for a new trial. Thank you, Your Honors. Thank you, Ms. Robinson, and thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short time. And we'll now recess for the evening. We'll begin again at 9 o'clock in the morning.